

Law Office of Thomas Stavola, Jr., LLC
209 County Road 537, Colts Neck, NJ 07722
P: 732-790-0639   E: tstavolajr@stavolalaw.com

Dated: January 1, 2024

**VIA ECF**
The Honorable Robert Kirsch, U.S.D.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

   **Re:** *Frederick K. Short, Jr., et al. v. N.J. Dept. of Educ., et al.*
   **Docket No. 3:23-cv-21105 (RK) (DEA)**

Dear Judge Kirsch:

  Plaintiffs hereby submit this letter in response to State Defendants' letter dated December 29, 2023. Pursuant to Your Honor's judicial preferences, this letter responds to the Defendants' anticipated Motion to Dismiss arguments. Plaintiffs delineate our responses to the Defendants' anticipated motion *infra*; however, this letter *shall not* be construed as setting forth all of Plaintiffs' possible arguments or counterarguments.

  Both Plaintiffs possess standing for their respective claims. When "the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). Cherry Hill parents – a cohort of which Plaintiff Short is a part – is the object of the government action by virtue of the fact that the Policy conceals the gender identity statuses of students from their parents; students are invited on a continual basis to have confidential discussions with school district personnel on the subject of gender, chosen name, pronouns, and students' preferences regarding parental communications; and, the policy abridges Plaintiff Short's fundamental right to direct the healthcare decisions of his children. And for those reasons, Plaintiff Short and the other parents are ostensibly the object of this illegal action, and standing is thus conferred.

  Plaintiff Short does not merely have a "keen interest in the issue," *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013), nor does he allege an "abstract injury." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). On the contrary, Plaintiff Short holds a "personal stake" in the dispute. *Raines v. Byrd*, 521 U.S. 811,



Law Office of Thomas Stavola, Jr., LLC
209 County Road 537, Colts Neck, NJ 07722
P: 732-790-0639  E: tstavolajr@stavolalaw.com

819 (1997). The transgender policy in place at Cherry Hill Schools is mandatory, it applies to all students, it is compelled upon parents without their consent, and it invites students to confidentially change their gender identity without the notice or consent of their parents who hold fundamental rights to be involved in same. This is very much the archetypal example of "personal stake." Accordingly, Plaintiff Short has and is suffering constitutional injury, and maintains standing to sue. Plaintiff Costello also maintains standing to sue for her past exposure to unconstitutional conduct. A "§ 1983 plaintiff's allegation that he has suffered from unconstitutional practices may be sufficient to establish standing to sue for damages." *Florence v. Bd. of Chosen Freeholders of Burlington*, 595 F. Supp. 2d 492, 514 (D. N.J. 2009). See also, *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).[1] Plaintiff Costello does not seek injunctive relief, rather she seeks damages, and a declaration that her constitutional rights were violated. Therefore, contrary to State Defendant's assertions, Plaintiff Costello possesses standing for those purposes.

Traceability and redressability can also be readily established. It is irrefragable that the school transgender policies in question are derived from the NJ Department of Education model policy, and would not have been instituted, absent the issuance of the guidance. As such, the NJ model policy is a but-for cause of Cherry Hill's and Cranford's policies. Following release of the NJ model guidance, countless NJ school districts adopted it, under the assumption that it was in fact binding. Moreover, as explicated in the Complaint and Amended Complaint, the Attorney General invoked the NJ guidance in lawsuits against several NJ school districts for alleged violations of the NJ Law Against Discrimination.[2] This evinces

---

[1] *Brown v. Fauver*, 819 F.2d 395, 400 (3rd Cir. 1987), "Thus, as numerous Supreme Court decisions illustrate, a given plaintiff may have standing to sue for damages yet lack standing to seek injunctive relief. See, e.g., *City of Los Angeles v. Lyons*, 461 U.S. 95, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983); *Ashcroft v. Mattis*, 431 U.S. 171, 52 L. Ed. 2d 219, 97 S. Ct. 1739 (1977); *Warth v. Seldin*, 422 U.S. 490, 514-17, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975); *O'Shea v. Littleton*, 414 U.S. 488, 38 L. Ed. 2d 674, 94 S. Ct. 669 (1974). While a § 1983 plaintiff's allegation that he has suffered from unconstitutional practices may be sufficient to establish standing to sue for damages, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . ." O'Shea, 414 U.S. at 495.

[2] "In these lawsuits, the Attorney General invoked the NJ Guidance, alleging that those school districts policies were inconsistent with established guidance from the New Jersey Department of Education. The complaint cited to various sections of the



Law Office of Thomas Stavola, Jr., LLC
209 County Road 537, Colts Neck, NJ 07722
P: 732-790-0639  E: tstavolajr@stavolalaw.com

a construction more consistent with binding than non-binding guidance. Accordingly, if the NJ model guidance were amended or rescinded consonant with the request for relief of the Amended Complaint, it is likely that Plaintiffs' injuries would be redressed. The school board of educations would thereupon abrogate their policies (or render them consistent with the NJ guidance).

As to the fourteenth amendment substantive due-process claims, State Defendants entirely misconceive the nature of Plaintiffs' claims. The claims alleged here extend far beyond the State's characterization of "failing to affirmatively provide parents with certain information." What has occurred - and is occurring - here is a continual interference with the fundamental right of parents to direct the medical care of their children. As explained in the Amended Complaint and substantiated by expert declaration, when a child changes his/her gender identity, this is a psychotherapeutic intervention necessitating parental involvement. As such, the rights infringed here invoke strict scrutiny review,[3] meaning that the State's countervailing interest must be compelling and narrowly tailored. To the extent any compelling interest exists (controvertible), such interest is restricted to the safety of the children in the school environment, and there is no compelling interest in obviating parents from partaking in their children's medical decisions. And furthermore, even if there were a compelling interest, it most certainly is not narrowly tailored. The State, nor school districts, have adduced clear and convincing evidence that Plaintiffs' fundamental parental rights should be usurped and supplanted. *Santosky v. Kramer,* 455 U.S. 744 (1982). Maintaining student safety and an atmosphere free of discrimination can surely occur as originally intended by

---

Guidance, including those cited hereinabove regarding the non-disclosure of students' transgender status." *Plaintiffs' Amended Complaint, p. 34, paragraph 93*.

[3] "Teaching a child how to determine one's gender identity at least plausibly is a matter of great importance that goes to the heart of parenting [emphasis added]." *Tatel v. Mt. Lebanon Sch. Dist.*, 637 F. Supp. 3d 295, 320 (2022). "[T]he Supreme Court has strongly suggested that minor children lack a liberty interest in directing their own medical care . . . Instead, children must instead rely on parents or legal guardians to do so until they reach the age of competency . . . Accordingly, any substantive due process rights related to directing the medical care of children devolve upon the parents or legal guardians of the children, rather than the children themselves [emphasis added]." *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 414-15 (2019).



Law Office of Thomas Stavola, Jr., LLC
209 County Road 537, Colts Neck, NJ 07722
P: 732-790-0639  E: tstavolajr@stavolalaw.com

the NJ Law Against Discrimination whilst keeping inviolable parental rights firmly intact.

Respectfully submitted,

*/s/ Thomas Stavola Jr., Esq.*
Thomas Stavola Jr. Esq., *Counsel for Plaintiffs*